IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| JIMMY IVY | PLAINTIFF |
| VS. | CIVIL ACTION NO.: 3:16CV306-HTW-LRA |
| WARDEN NORRIS HOGANS, et al | DEFENDANTS |

REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

This cause is before the Court on Defendants' Motion for Partial Summary Judgment Based on Plaintiff's Failure to Exhaust Administrative Remedies [23].

Plaintiff Jimmy Ivy's claims stem from being moved on February 22, 2016, from general population to administrative segregation while he was housed at East Mississippi Correctional Facility [EMCF] as an inmate. He claims that the move was made without him being given proper notice or justification. Ivy also contends that he was improperly issued a rule violation report [RVR] for possession of a cell phone in retaliation for filing an administrative grievance regarding his assignment to segregation. According to Defendants, Ivy did file a grievance on March 11, 2016, complaining that he was moved to segregation on Unit 6-D despite a search of his cell by staff revealing no evidence of contraband. They assert that Ivy did not submit grievances regarding an RVR he received for possession of a cell phone, or any grievances alleging retaliation for filing the ARP regarding his assignment to segregation. Defendants contend that the unexhausted claims should be dismissed pursuant to 42 U.S.C. §1997e(a) (2000).

Failure to exhaust is an affirmative defense, so these Defendants have the burden of demonstrating that Ivy failed to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S.

1

199, 216 (2007). At the summary judgment stage, this means that Defendants "must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor." *Dillon v. Rogers,* 596 F.3d 260, 266 (5th Cir. 2010). The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Tex. St. Board of Dental Exam'rs*, 304 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). The burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Allen v. Rapides Parish Sch. Bd.*, 304 F.3d 619, 621 (5th Cir. 2000).

As Defendants point out, the applicable section of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997(e), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Defendants have moved for summary judgment on grounds that Ivy has failed to comply with the exhaustion requirement by properly advancing all of his claims through the prison's Administrative Remedy Program. These Defendants do not deny, and the record establishes, that Ivy initiated a grievance through the ARP program and pursued it to completion [ARP No. EMCF-16-445]. Their argument is that the substance of the grievance cannot be construed so as to include all of Ivy's current claims against them. Ivy's initial grievance, dated March 11, 2016, describes his complaint as follows:

COMPLAINT: ILLEGALLY CONFINED
AND/OR HELD IN SEGREGATION

* On February 22, 2016 I was escorted out of the hall-way on Housing Unit Two (2) to my cell in hand-cuffs. Upon entering my pod and cell I was told to stand there while my cell was searched. After my cell was deemed clear of illegal contraband I was escorted to medical where a body sheet was conducted on me and later escorted to Housing Unit Six (6) D where I currently sit.

* I have yet to be told why I have been housed in segregation, which policy mandates should have been done by the watch commander the moment I was placed in segregation or before the shift was over.

* I have not been given a "Detention Notice" which policy mandates should have been done no later than twenty-four (24) hours after the segregation took place.

* I was not written a rule violation report for any wrong doing as no wrong doing occurred. Policy however, mandates that if any wrong doing had occurred that a rule violation report was to be written within twenty-four (24) hours of the incident. Neither has occurred.

RELIEF

1. That I be released from segregation and placed back into general population.

2. That I am not retaliated against for filing this request for an administrative remedy.

Ivy's First Step Response, dated March 17, 2016, was that "offender was explained his confinement by the case manager during his detention notice hearing." [23-1, p. 8]. Ivy proceeded to Step Two, stating on March 22, 2016, he was unsatisfied because he had "no RVR and I have been lock down over 20 days. I received my Detention Notice on 3-17-2016 from the Case Manager Due Process was violated."

The Second Step Response was authored by Warden Shaw, dated March 23, 2016, and states as follows:

> Your request for Administrative Remedy has been received and reviewed in this office on March 15, 2016, concerning your request to be transferred to general population.
>
> As stated in your first step response, you spoke to your case manager and they explained your confinement at your detention notice hearing. It was noted that you understood what was told to you. If you need further clarification please contact your case manager with an inmate request form.
>
> I trust I have answered your concerns pertaining to your complaint and you consider the matter closed.

[ 23-1, p. 9].

In support of their motion, Defendants attached the ARP file, along with the December 2, 2016, Affidavit from Mary Dempsey, the ARP Coordinator at EMCF, employed by Management & Training Corporation (MTC). According to Ms. Dempsey, Ivy submitted the grievance discussed above on March 11, 2016. However, he had not submitted any grievances regarding an RVR he received for possession of a cell phone, nor any grievances alleging retaliation for filing the March 11, 2016, ARP regarding his assignment to segregation. According to Defendants, he was moved pending investigation after MDOC alerted EMCF officials the same day that Plaintiff had been sending a minor child nude photos of himself using a cell phone. He did receive an RVR on April 7, 2016, stemming from this allegation [28-4]. He was found not guilty at his disciplinary hearing on April 26, 2016, and moved back to Housing Unit 2-D two days later [23-3].

Ivy filed a response to Defendants' motion, contending that he exhausted his claims of retaliation on October 24, 2016, when Warden Shaw gave the final decision regarding his retaliation claims [ARP No. EMCF-16-1514; 28-1]. According to Ivy, exhaustion may be completed while the federal case is pending [28, p. 3 n.2]. He also argues the merits of the RVR that he did receive, contending that it was obviously untrue because he was not even housed in the unit where he was charged with having a cell phone on the date the RVR stated. Whether or not he was guilty of the RVR is irrelevant as to whether or not Ivy exhausted his retaliation claims before filing this federal lawsuit.

Ivy filed his ARP Second Step appeal in EMCF 16-1514 on October 20, 2016, claiming that he was not allowed to work in the gym because of retaliation. He contended that he was eligible to work but was fired because he "filed paperwork on several guidelines that was broken." [28-1, p. 2]. The Second Step Response was given on October 24, 2016. This federal lawsuit was filed months before, on April 26, 2016.

While a prisoner must exhaust the administrative remedies that are available to him before he can proceed in federal court, *Woodford v. Ngo*, 548 U.S. 81, 85 (2006), he may avoid dismissal of his claims where he can show that the alleged remedy was not "available" to him. *Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016). Evidence that shows that the prisoner filed a grievance on another matter establishes that the process was "available" to him. *Putnam v. Traylor*, 633 F. App'x 600, 601 (5th Cir. 2016). The grievances Ivy did file through two steps demonstrates that the ARP process was available in his case.

As the Supreme Court has recognized, the exhaustion requirement is not merely an arbitrary rule: "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204. Additionally, the exhaustion process may reduce the number of suits filed by prisoners and also "improve the quality of suits that are filed by producing a useful administrative record." *Id*. The level of specificity required in a grievance is set by the prison's own grievance process. *Jones*, 549 U.S. at 218. The Administrative Remedy Program of the East Mississippi Correctional Facility is described in its Inmate Handbook. According to the Handbook, inmates are directed to keep their original letters of request "as brief as possible." In so doing, however, the inmate is also advised to "present as many facts as possible to answer all of the questions (who, what, when, where, and how) concerning the incident." Handbook, p. 18.

A review of Ivy's ARP claims shows that, under EMCF policy or § 1983 jurisprudence, he did not set out his retaliation claim in an ARP prior to filing this suit. His March 11, 2016, ARP complaint only complains that he had been moved to segregation more than two weeks earlier despite a search of his cell by staff revealing no evidence of contraband. He never submitted any grievances regarding the RVR he received for possession of a cell phone or that the RVR was issued in retaliation for filing a grievance for being moved to segregation. Although his October 2016 complaint does complain of "retaliation," it was not filed and completed prior to the filing of this lawsuit. An inmate cannot pursue a claim under § 1983 where he failed to adequately describe it through the grievance procedure, even though he set out the basis of another claim. *See,*

6

*e.g., Pearson v. Taylor*, 665 F. App'x 858, 867 (11th Cir. 2016) (dismissing deliberate indifference to medical needs claims against warden and deputy wardens where grievance only alleged excessive force against an officer); *Ward v. Hoffman*, No. 15-2678, 2016 WL 6651870 at *2 (7th Cir. Nov. 10, 2016) (dismissing claims of excessive force where grievance only complained of procedures used by disciplinary committee); *Burns v. Eaton*, 752 F.3d 1136 (8th Cir. 2014) (where grievance only claimed one officer used excessive force by spraying an inmate with pepper spray, court properly dismissed deliberate indifference claim against a different officer who delayed turning on the shower so the prisoner could wash it off); *Hubbard v. Danberg*, 408 F. App'x 553, 555-56 (3rd Cir. 2010) (dismissing claims of discrimination in job placement and mistreatment of disabled prisoners because grievance only alleged discrimination against prison chapter of the NAACP); and *Stone v. Albert*, 257 F. App'x 96, 98 (10th Cir. 2007) (affirming dismissal of claims for excessive force when grievance only alleged inadequate medical care).

Even if Ivy's October 2016 ARP was found to comply with the exhaustion requirements under the law, it was untimely for purposes of exhaustion. He was required to complete the grievance procedure in its entirety before he is able to file suit under § 1983. The requirement of exhaustion applies regardless of Plaintiff's opinion on the efficacy of the institution's administrative remedy program. *Alexander v. Tippah County, MS*, 351 F.3d 626, 630 (5th Cir. 2003). It is not for this Court to decide whether the procedures "satisfy minimum acceptable standards of fairness and effectiveness." *Booth*, 532 U.S. at 740 n. 5.

The Fifth Circuit has confirmed that "the PLRA pre-filing exhaustion requirement is mandatory and non-discretionary," and that "district courts have no discretion to waive the PLRA's pre-filing exhaustion requirement." *Gonzalez v. Seal,* 702 F.3d 785, 787-88 (5th Cir. 2012) (per curiam); *Moussazadeh v. Texas Dept. of Criminal Justice*, 703 F.3d 781, 788 (5th Cir. 2012) (quoting *Gonzalez*). In an earlier case, the Fifth Circuit had held that "a non-jurisdictional exhaustion requirement may, in certain rare instances, be excused." *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998). The Court in *Gonzalez* discussed the Supreme Court decisions in *Jones v. Bock* and *Woodford v. Ngo*, finding that the ruling in *Underwood* was no longer valid. Specifically, the Court found:

> After *Woodford* and *Jones*, there can be no doubt that pre-filing exhaustion of prison grievance processes is mandatory. We thus hold that *Underwood* has been tacitly overruled and is no longer good law to the extent it permits prisoner lawsuits challenging prison conditions to proceed in the absence of pre-filing administrative exhaustion. District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint. *It is irrelevant whether exhaustion is achieved during the federal proceeding.* Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted.

*Gonzalez*, 702 F.3d at 788 (emphasis added).

The Court in *Gonzalez* overruled prior case law giving district courts the discretion to "excuse" an inmate's failure to exhaust before filing suit. *Id.,* overruling *Underwood v. Wilson*, 151 F.3d 292 (5th Cir. 1998). The inmate in *Gonzalez* did as Ivy claims to have done: he completed the ARP *after* filing his federal lawsuit. The Court held that this was not sufficient to comply with the PLRA's exhaustion requirements.

8

In this case, Ivy clearly did not exhaust his administrative remedies regarding his claims of retaliation **before** filing this lawsuit on April 26, 2016.  Although that failure to exhaust mandates that the exhaustion claims against these Defendants be dismissed, it is not fatal to his remaining claims.  *Jones*, 549 U.S. at 924 ("A typical PLRA suit with multiple claims . .. may combine a wide variety of discrete complaints, about interactions with guards, prison conditions, generally applicable rules, and so on, seeking different relief on each claim.  There is no reason failure to exhaust on one necessarily affects any other.").

Accordingly, it is the undersigned's recommendation that Defendants' Motion for Partial Summary Judgment Based on Plaintiff's Failure to Exhaust Administrative Remedies [23] be **granted**, and that Ivy's claims regarding retaliation related to the RVR he received for possession of a cell phone be dismissed without prejudice due to his failure to exhaust his administrative remedies.  His claims related to his assignment to administrative segregation should move forward, and the undersigned will conduct an omnibus hearing in Ivy's case in the near future.

Respectfully submitted, this the 31st day of May, 2017.

                                    _S/ Linda R. Anderson_____
                                    UNITED STATES MAGISTRATE JUDGE